Timothy D. KNISELY, Appellant–Respondent,

v.

Susan L. (Knisely) FORTE, Appellee–Petitioner.

No. 02A03–0610–CV–462.

Court of Appeals of Indiana.

Oct. 23, 2007.

---

Robert L. Nicholson, Andrea R. Dick, Fort Wayne, IN, Attorneys for Appellant.

Thomas L. Stucky, Fort Wayne, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Timothy D. Knisely (Timothy), appeals the trial court's Order modifying his obligations of child support, uninsured medical expenses, and educational expenses in favor of Appellee–Petitioner, Susan L. Forte (Susan), for support of their minor child, K.K.

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

Timothy raises two issues on appeal, which we restate as the following three issues:

(1) Whether the trial court abused its discretion in modifying Timothy's child support obligation;

(2) Whether the trial court properly apportioned payment of K.K.'s college expenses; and

(3) Whether the trial court erred in directing its Order to be retroactive to a date prior to the filing of Susan's Petition for Modification of Support.

### FACTS AND PROCEDURAL HISTORY[1]

Timothy's marriage to Susan was dissolved in June of 1993. Susan was

---

1. On April 6, 2007, Susan filed a Motion to Strike pages 42 through 146 of Timothy's Appendix, claiming that those pages contained evidence outside the record pertaining to Timothy's medical history. In our review, we determine that Timothy's inclusion of these medical records in his Appendix has no impact on our decision. As a result, we here-

awarded custody of the parties' two children, N.K. and K.K., while Timothy was ordered to pay $130.00 per week in child support. On May 3, 2001, Timothy filed a Motion for Modification or Abatement of Child Support and Health Insurance Orders. On July 10, 2002, the trial court granted the motion and entered an order which reduced Timothy's child support obligation to $73.00 per week on a temporary basis. Additionally, the trial court ordered Timothy to advise Susan's counsel and the court of any changes in his disability status, as well as the outcome of litigation he was pursuing as a result of injuries he sustained in the course of his employment with Norfolk Southern Railway Company (the Railroad).

On February 1, 2005, Timothy reached a settlement agreement with the Railroad. On August 9, 2005, Susan filed an Information for Contempt against Timothy for failing to disclose the terms of his settlement agreement with the Railroad to her and the trial court. On the same date, Susan also filed a Petition to Modify Child Support, requesting the trial court to order Timothy to pay an increased amount of child support, as well as a portion of uninsured medical expenses and post-secondary education expenses for their daughter, K.K. On March 21, 2006, the trial court held a hearing on all pending matters, which additionally included a second Information for Contempt and a Motion to Compel filed on December 14, 2005 and March 13, 2006, respectively, by Susan. On August 3, 2006, the trial court entered the following Order, concluding in pertinent part:

1) [Timothy's] child support obligation is modified to the sum of $193.00 per week, effective February 1, 2005. The retroactivity of this Order creates a child support arrearage of $9,360.00, to be paid to [Susan] within 60 days.

2) College expenses for the minor child, [K.K.], shall be paid [one-third] by [Susan] and [two-thirds] by [Timothy], effective February 1, 2005. The retroactivity of this Order results in a payment due Susan from Timothy in the sum of $2,858.43, which shall be paid to [Susan] within 60 days.

3) [Susan] shall be responsible for the payment of the first $750.00 per year in reasonable uninsured medical, dental[,] and related expenses, effective February 1, 2005. Any remaining expenses shall be paid [one-third] by [Susan] and [two-thirds] by [Timothy]. The [c]ourt finds that, for 2005 uninsured medical expenses, [Susan's] greater initial obligation is offset by [Timothy's] greater payment responsibility and [Timothy] is deemed to have paid his obligation toward 2005 on uninsured medical expenses. [Timothy] is also deemed to have fully satisfied his responsibility for uninsured medical expenses for all years prior to 2005 as well.

4) The [c]ourt defers any extension of its college expense Order to the parties' daughter, [N.K.], at this time.

5) Although both parties have expended a significant amount of attorney fees and costs, the [c]ourt finds that [Timothy] incurred significant fees as a result of [Susan's] failure to comply with [Timothy's] discovery requests. Accordingly, [Susan] shall pay [Timothy's] attorney the sum of $1,000.00 (which can be offset against [Timothy's] obligations as set forth above).

(Appellant's App. p. 148).

On August 23, 2006, Susan filed a Motion to Correct Error, asking the trial

by deny Susan's Motion to Strike, as the evidence is harmless.

court to reconsider the assessment of attorney's fees against her, as well as its conclusion that Timothy had satisfied his obligation for uninsured medical expenses prior to and including the year 2005. On November 20, 2006, the trial court issued an Order to reflect an award of attorney's fees against Timothy, rather than Susan, and to affirm its ruling as to the issue of Timothy's payment of uninsured medical expenses prior to and during 2005.

Timothy now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Timothy argues that the trial court erred by failing to explain its reasons for modifying his child support obligation to K.K., and that Susan presented no evidence to support a deviation from the Indiana Child Support Guidelines (the Guidelines). Timothy also complains that the trial court did not adequately explain its apportionment to him of K.K.'s college expenses. Finally, Timothy disputes the retroactivity of the trial court's Order, requiring him to pay child support, uninsured medical expenses, and educational expenses retroactive to February 1, 2005.

### I. Child Support

A trial court's modification of a support order will be reversed only for an abuse of discretion, that is, when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Burke v. Burke*, 809 N.E.2d 896, 898 (Ind.Ct.App.2004). In determining whether the trial court abused its discretion in modifying a child support order, we neither reweigh the evidence nor judge the credibility of witnesses, but instead consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.* Where there is substantial evidence to support the determination of the trial court,

the judgment will not be disturbed even though we may have reached a different conclusion. *Id.*

Child support orders may be modified based upon the following statutory guidelines:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31–16–8–1.

■ Here, the record reveals that Susan petitioned the trial court for a modification of support based on the contention that there has been a substantial and continuing change in Timothy's circumstances since the trial court's temporary child support order issued in July of 2002. In particular, Susan asserted that Timothy's settlement with the Railroad on February 1, 2005 placed him in a position to contribute more financial support to their children. Our own review of the parties' Joint Statement of the Evidence indicates that Timothy settled his lawsuit against the Railroad for a gross sum of $1,000,000.00, resulting in a net return and one-time payment to him of $707,786.82. However, Timothy argued to the trial court that the settlement money should not be imputed to him as regular income, as it was a one-time disbursement. Specifically, Timothy highlighted that the settlement money was

to be used to pay his necessary living expenses for the remainder of his life because his injuries have left him permanently disabled and unable to work.

■ In determining parents' income in the child support guideline calculation, "the definition of 'weekly gross income' is broadly defined to include not only actual income from employment, but also potential income and imputed income from 'in-kind' benefits." *Harris v. Harris*, 800 N.E.2d 930, 939 (Ind.Ct.App.2003), *trans. denied* (quoting *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct.App.2000)). While a very fact-sensitive determination, irregular income may be included in the total income approach taken by the Guidelines. *Harris*, 800 N.E.2d at 939. Furthermore, the Guidelines urge judges and practitioners to find ways to include income that would have benefited the family had it remained intact, as well as to be receptive to deviations where reasons justify them. *Id.*

In *Harris*, we held that the trial court did not abuse its discretion in taking into account the net amount of a settlement award in calculating child support. *Id.* at 940. While we agreed that the nature of a settlement award is a one-time payment of money having only a single impact on an individual's financial circumstances, we nonetheless concluded that such an award is irregular income, which a trial court, in its discretion, may consider in its determination of child support. *See id.* As in *Harris*, we find it entirely reasonable to state that in the present case, Timothy's award would have ultimately benefited the children if the family had remained intact. *See id.* Accordingly, we hold that the trial court did not abuse its discretion in considering Timothy's settlement agreement with the Railroad when calculating his child support obligations.

■ Further, we note that despite Timothy's argument to the contrary, our review of the record indicates that the trial court utilized the Child Support Obligation Worksheet in its calculations of child support in 2002 and 2006, both times arriving at an amount in accordance with the Guidelines. In particular, the record shows that in 2002, when the trial court *temporarily* decreased Timothy's child support obligation to $73.00 per week, the trial court calculated Timothy's weekly gross income at $300.00. (Emphasis added). In contrast, the trial court most recently determined that Timothy's weekly gross income is $1,013.20. Thus, since 2002, Timothy's weekly income has increased by more than $700.00, undoubtedly constituting a substantial change in circumstances. Moreover, we cannot ignore the trial court's limiting language in its 2002 order for child support, *i.e.* that Timothy's decreased child support obligation was to be temporary, pending his employment status and any agreement made with the Railroad. For all of these reasons, we conclude that the trial court was justified in increasing Timothy's child support obligation from $73.00 per week to $193.00 per week, an amount which we note is nearly $100.00 less per week than Susan requested.

## II. *K.K.'s Educational Expenses*

■ Next, we address Timothy's contention that the trial court erred in apportioning two-thirds of K.K.'s college expenses to him. Again, Timothy faults the trial court's lack of an explanation.

■ We first note that a child support order and an educational expense order are separate and distinct. *See Sutton v. Sutton*, 773 N.E.2d 289, 294 (Ind.Ct.App. 2002) (education expenses are addressed separately from child support). I.C. § 31–16–6–2 governs educational support and

provides that an education support order may include amounts for the child's education in institutions of higher learning. *See also Sebastian v. Sebastian,* 798 N.E.2d 224, 231 (Ind.Ct.App.2003). Educational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. I.C. § 31–16–6–2; *Sebastian,* 798 N.E.2d at 231. The Child Support Guidelines commentary on post-secondary educational expenses further states:

> [T]he court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.
>
> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student ... A consideration of the foregoing factors is addressed in the Worksheet on Post–Secondary Education Expense which should be utilized in making a fair distribution of this expense.

Ind. Child Support Guideline 6, cmt.

Our supreme court has clarified that measures that reduce the cost of attending college, including student loans, should "be factored in to college expense orders where their potential is raised by the record." *Carr v. Carr,* 600 N.E.2d 943, 946 (Ind.1992). Furthermore, in the recent case of *Quinn v. Threlkel,* 858 N.E.2d 665, 671–72 (Ind.Ct.App.2006), we held that a trial court's order for payment of college expenses was inadequate where it placed no requirement on the child to apply for financial aid of any kind. Accordingly, we remanded to the trial court to enter more complete findings. *Id* at 672.

In the present case, the record shows that Susan submitted evidence that K.K.'s annual expenses for attending Indiana University amount to approximately $15,000.00. However, the record fails to indicate that the parties brought forth any evidence of scholarships, grants, loans, or any other type of financial aid for K.K.'s education. Instead, the trial court made very general findings apportioning KK's college expenses between her parents without any inquiry into KK's ability to receive student loans. There were no findings regarding what percentage of the cost should be borne by KK and what type of financial aid she was expected to receive. Moreover, there was no requirement in the trial court's order that she apply for financial aid of any kind. Accordingly, similar to *Quinn,* remand is necessary for the trial court for clarification and further consideration of the post-secondary education expense order.

## III. *Retroactivity of the Order*

 Timothy also claims that it was error for the trial court to order payment of child support, uninsured medical expenses, and educational expenses for K.K. retroactive to February 1, 2005, the date he reached a settlement agreement with the Railroad. Specifically, Timothy faults the trial court for ordering these payments retroactive to a date before August 9, 2005,

when Susan filed her Petition for Modification of Support.

We will reverse a decision regarding retroactivity only for an abuse of discretion or if the trial court's determination is contrary to law. *Quinn*, 858 N.E.2d at 674. It is within a trial court's discretion to make a modification of child support relate back to the date the petition to modify was filed, or any date thereafter. *Id.* Although modifications typically apply only prospectively, "[a]llowing trial courts discretion in making the modification of child support effective as of the date the petition is filed may serve to avoid dilatory tactics." *Id.* (quoting *Talarico v. Smithson*, 579 N.E.2d 671, 673 (Ind.Ct.App. 1991)).

Here, the trial court ordered Timothy to pay child support, uninsured medical expenses, and college expenses retroactive to a date before Susan filed her Petition for Modification of Support. At first glance, this would appear to be clear error by the trial court, in light of our previous holdings that "[r]etroactive modification of support is erroneous [ ] if the modification purports to relate back to a date earlier than that of the petition to modify." *Carter v. Dayhuff*, 829 N.E.2d 560, 567 (Ind.Ct.App. 2005) (quoting *Reeves v. Reeves*, 584 N.E.2d 589, 594 (Ind.Ct.App.1992), *trans. denied* ). However, the facts in the instant case warrant further examination, as well as consideration of public policy. The record reveals that Susan requested Timothy's payments to be ordered retroactive to the date of his settlement agreement because the trial court's July 10, 2002 Order required that he notify Susan and the court of any such settlement. While he contends his nondisclosure was justified due to a confidentiality clause, Timothy nevertheless admits to refusing to disclose the amount of his settlement to Susan or the trial court until the trial court compelled him to do so. Thus, to allow Timothy to avoid retroactive payment of support between February and August of 2005 would reward him for his refusal to comply with the trial court's July 2002 Order and Susan's repeated requests for the settlement information prior to her filing her Petition for Modification of Support in August of 2005.

Furthermore, we find that the trial court's July 2002 Order, directing Timothy to pay a decreased amount of support "on a temporary basis," was in response to Timothy's filing of a petition to modify support in May of 2001. (Appellant's App. p. 31). As previously explained, the 2002 Order also required Timothy to notify the trial court upon a change in his circumstances resulting from his lawsuit against the Railroad. Consequently, had Timothy followed the trial court's 2002 Order in this regard, Susan would not have been forced to file her own Petition for Modification of Support in August of 2005—seven months after Timothy settled his case with the Railroad. Therefore, we refuse to reverse the trial court on this issue and reward Timothy for his noncompliance with the 2002 Order. Thus, we conclude that the trial court properly ordered Timothy to pay child support, uninsured medical expenses, and college expenses retroactive to February 1, 2005.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in modifying its Order for child support and uninsured medical expenses. In addition, the trial court did not err in ordering Timothy to make these payments retroactive to a date prior to Susan's filing of a Petition for Modification of Support. However, we remand to the trial court for further consideration of the post-secondary education expense in line with this opinion.

Affirmed in part, reversed in part and remanded with instructions.

BARNES, J., and NAJAM, J., concur.